IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DAVID CRAWLEY,                          )
                                        )
            Plaintiff,                  )        Civil Action No. 7:19cv00474
                                        )
v.                                      )        **MEMORANDUM OPINION**
                                        )
B. KANODE, *et al.*,                    )        By:    Hon. Thomas T. Cullen
                                        )               United States District Judge
            Defendants.                 )

_____

David Crawley, a former Virginia inmate[1] proceeding *pro se*, filed this civil action under

42 U.S.C. § 1983, alleging claims of excessive force, retaliation, due process violations, and

equal protection violations against 19 defendants. Some of the defendants have moved to

dismiss some of the claims.[2] After reviewing the pleadings, the court will grant in part and

deny in part these defendants' motion to dismiss.

## I.

Crawley breaks his complaint into 35 enumerated claims and designates the specific

individual responsible for each of his claims. (*See* ECF No. 1, at 2–7.) Crawley's claims begin

with an alleged physical assault on May 3, 2017, while he was incarcerated at River North

---

[1] Crawley was incarcerated when he filed this action but has since been released. (*See* ECF No. 53.)

[2] Crawley filed this action against Warden Kanode, Disciplinary Appeals Unit Manger Stapleton, DHO MacVean, Regional Administrator Elam, DHO Wolfe, Unit Manager Doss, Unit Manager B. Hall, Investigator Horton, Lt. Richardson, Lt. Lundy, Lt. Colna, Sgt. Cutchens, Officer A. Hall, Officer Murray, Officer Stidham, Officer Redmond, Officer Crotts, Officer Garcia, and Officer Adkins. Defendants Crotts, Cutchens, Doss, Garcia, B. Hall, Horton, Lundy, Murray, Redmond, Richardson, and Wolfe filed an answer. Defendants Adkins, Colna, Cutchens, Elam, Garcia, A. Hall, B. Hall, Kanode, Lundy, MacVean, Murray, Richardson, and Stapleton filed the present motion to dismiss.

Correctional Center ("River North"), followed by claims that he was subjected to retaliatory actions, false disciplinary charges, and a second physical assault.[3]

Crawley alleges that on May 3, 2017, while he was waiting for medication in the vestibule, Officer Crotts struck Crawley's shoulder repeatedly with a closed fist. Crawley claims that Officer Crotts was also holding an "item" at the time, and that the item repeatedly "smacked" Crawley in his head, face, and neck. (ECF No. 1, at 2.)

Nearly a month later, on June 2, 2017, Crawley filed an emergency grievance stating that he was being denied grievance forms so that he could file a complaint against Officer Crotts for the alleged assault. On the same day, Lt. Lundy responded to the emergency grievance and stated that, having reviewed the rapid eye video, at no time did Officer Crotts touch Crawley in any way, and Crawley's statements about the assault were "nothing but false." (ECF No. 1-1, at 2.) Crawley alleges that Lt. Lundy also threatened Crawley, telling him that if he did not withdraw his emergency grievance, Lt. Lundy would "make sure [Crawley] regret[s] it." (ECF No. 1, at 2.) Unit Manager ("UM") Doss was supposedly present when this "threat" was allegedly made. (*Id.*)

On June 6, 2017, based on Crawley's allegedly false statements in the emergency grievance, Officer A. Hall charged Crawley with a disciplinary offense for lying or giving false information to an employee. Crawley claims that Officer A. Hall filed this "bogus" charge against him as retaliation because Crawley refused to withdraw the emergency grievance that

---

[3] Crawley attaches grievance and disciplinary records to his complaint. (*See* ECF No. 1-1.) The court considers them as part of his complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (The court may also consider documents "attached to the complaint as exhibits . . . ."); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

he had filed concerning Officer Crotts. (*Id.*) Crawley states that Lt. Colna "authorized the filing of [the] bogus [] charge" in order to "deter" Crawley from filing a criminal complaint against Officer Crotts. (*Id.* at 6.)

On June 28, 2017, a disciplinary hearing was held on this charge. Crawley claims that Disciplinary Hearing Officer ("DHO") Wolfe "arbitrarily deprived" Crawley of the opportunity to submit declarations of witnesses from the alleged assault and refused to review the video footage. (*Id.* at 2.) DHO Wolfe found Crawley guilty of the disciplinary charge and imposed a penalty of 30 days of cell restriction. Crawley claims that UM Doss subsequently "approved" Crawley's disciplinary conviction even though he "knew [it] was false" because he was retaliating against Crawley for Crawley's refusal to "drop the assault complaint against Officer Crotts." (*Id.*) Thereafter, Warden Kanode also approved the disciplinary conviction even after Crawley "apprised" him that Crawley had not been allowed to call witnesses in his defense. (*Id.* at 3.)

On July 18, 2017, Lt. Colna searched Crawley's cell. Crawley alleges that Lt. Colna "illegally" confiscated Crawley's "personal property" consisting of two folders of "legal documents" related to the alleged May 3 assault. (*Id.*) Crawley claims that these folders were never returned to him "in an attempt to preclude [him] from proving his claims against [Officer] Crotts." (*Id.*) Crawley alleges that on the same day, Investigator Horton threatened Crawley that it "wouldn't end well" if Crawley did not stop "pursuing action against" Officer Crotts. Investigator Horton also allegedly told Crawley to "forget the two folders of documents." (*Id.*)

On July 20, 2017, Officer Adkins charged Crawley with a disciplinary offense for "failing to follow institutional count procedures or interfering with count" after he laid in bed and "would not" stand for count. (*Id.*) Crawley claims that Officer Adkins filed this "bogus" charge against him as retaliation because Crawley continued to pursue criminal action against Officer Crotts and had filed a complaint against Lt. Colna, Officer Adkins's supervisor. (*Id.*) Crawley states that, at his disciplinary hearing for this charge, DHO MacVean "refused to permit" Crawley to review the video footage as a means of retaliation for Crawley refusing to drop the criminal complaint against Officer Crotts. (*Id.* at 5.) Crawley claims that the video footage would support his claim of innocence. DHO MacVean found Crawley guilty of the disciplinary infraction and imposed a $12 fine. Crawley claims that Warden Kanode upheld the disciplinary conviction on appeal, even after reviewing the "exculpatory" video footage, in retaliation for Crawley's criminal complaint against Officer Crotts. (*Id.*)

That same day, Sgt. Cutchens allegedly called Crawley to his office, threatened and insulted him, told Crawley that his "actions against" Officer Crotts would not "be tolerated," demanded that Crawley "be locked up," and charged Crawley with a "bogus" disciplinary charge for threatening assault. (*Id.* at 3.) Crawley claims that Officer Redmond was in the office with Sgt. Cutchens and Crawley, and that she placed Crawley in handcuffs, punched him with a fist in his genitals, and said, "[T]hat's what we call an assault ni**er." (*Id.*) Lt. Lundy "authorized the processing of [the] bogus [] charge"—even though he knew that Crawley was being placed in segregation—to deter him from pursuing the criminal complaint against Officer Crotts. (*Id.*)

The next day, Intel Officer A. Hall charged Crawley with a disciplinary infraction for "conspiracy or making plans to commit/possession of unauthorized drugs" after finding a workbook and other pages where Crawley had written codes for drugs and that he wanted to obtain a cell phone to "conduct business without using codes." (ECF No. 1-1, at 28.) Crawley claims that Intel Officer A. Hall wrote this "bogus" charge for the "sole purpose" of increasing Crawley's security level because Crawley refused to drop a criminal complaint against Officer Crotts. (ECF No. 1, at 4.)

A disciplinary hearing was held on Intel Officer A. Hall's charge July 31, 2017. Crawley alleges that DHO MacVean denied Crawley his staff witness because he "felt he could provide testimony as to what [the witness] could have testified to." (*Id.*) Crawley also claims that DHO MacVean violated due process by failing to give Crawley "prior notice of the offense because it contained no location of [the] discovery of the alleged" written documents. (*Id.*) Crawley argues that DHO MacVean retaliated against him by accepting the testimony of Intel Officer A. Hall, even though Hall failed to provide "any evidence," a correct offense date, discovery location, or witness to what was found. (*Id.*) Finally, Crawley claims that DHO MacVean demonstrated that the was biased by allowing Intel Officer A. Hall to change the offense date during the hearing, "sanctioning the illegal search," and failing to request to see the documents containing the drug codes before rendering his decision. (*Id.*) Crawley alleges that Warden Kanode upheld Crawley's disciplinary conviction on appeal, despite having "knowledge of all the violations," thereby making him "complicit in each of the violations" and demonstrating that he was retaliating against Crawley for failing to "drop the criminal complaint against" Officer Crotts. (*Id.*) Crawley claims that on his further appeal, Elam, the Western Regional

Administrator for the Virginia Department of Corrections ("VDOC"), failed to respond to every contention that Crawley raised, and Stapleton, the Manager of the Appeals Unit for the VDOC, became complicit in the due process violations when she upheld Crawley's disciplinary conviction.

Crawley alleges that on July 22, 2017, Officer Murray visited Crawley's cell and informed him that, while he was housed in the segregation unit, he would not be receiving outside recreation or showers during Murray's shifts because of the criminal complaint Crawley had filed against Officer Murray's "buddy" Officer Crotts. (*Id.* at 5.) Officer Murray told Crawley that Crawley's criminal complaint "threaten[ed] his friend['s] employment status" because it was a criminal complaint instead of remaining "in house with the [V]DOC." (*Id.*) Three days later, Officer Garcia allegedly went to Crawley's cell and informed Crawley that he would also not be receiving outside recreation or showers during Garcia's shifts, based on his criminal complaint against Officer Crotts. Crawley states that Officer Stidham also works during the same shift as Officer Garcia. Subsequently, Lt. Richardson advised Crawley that he had "verified" that the two shifts had been "arbitrarily depriving" Crawley of outside recreation and showers for a month, even though Crawley had been complying with policy to be able to obtain these privileges. (*Id.* at 6.) Crawley claims that despite acknowledging this, Lt. Richardson took no action to correct the "egregious injustice." (*Id.*) In addition, while Unit Manager ("UM") B. Hall was making rounds with Lt. Richardson one day, Crawley advised UM B. Hall that he had been deprived of outside recreation and showers every day, but B. Hall failed to take any action to correct it.

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

### III.

Crawley alleges that Officer A. Hall, Lt. Colna, Officer Adkins, DHO MacVean, Warden Kanode, and Lt. Lundy retaliated against him. The defendants have moved to dismiss several of the retaliation claims. The court concludes that, although some of Crawley's allegations against the defendants fail to state a plausible federal claim, some *do* state a plausible claim. Therefore, the court will grant in part and deny in part the defendants' motion to dismiss these claims.

In order to state a colorable First Amendment retaliation claim under § 1983, a plaintiff "must allege that (1) []he engaged in protected First Amendment activity, (2) the defendant[] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *see also Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017).

Retaliation claims are "treated with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). "Claims of retaliation must . . . be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Adams*, 40 F.3d 72, 74 (4th Cir. 1994). An inmate must present more than "naked allegations of reprisal . . . ." *Id.* at 74.

### A. Claims #3 and 34 against Officer A. Hall

In Claims #3 and 34, Crawley alleges that Officer A. Hall used a "false statement" from Lt. Lundy written in response to an emergency grievance to file a "bogus" charge against Crawley for "lying or giving false information to an employee." (ECF No. 1, at 2 & 6–7.) Crawley claims that Officer Hall filed the charge against him because Crawley refused to withdraw his assault and battery claim against Officer Crotts. Crawley argues that this constitutes retaliation for the exercise of his First Amendment rights.

On June 2, 2017, Crawley filed an emergency grievance alleging that Officer Crotts had assaulted him. (ECF No. 1-1, at 1.) That same day, Lt. Lundy responded to the emergency grievance and wrote that he had reviewed the camera footage and that "at no time did Officer Crotts touch you in any way." (*Id.*) Lt. Lundy noted that Crawley's statements were "nothing but false." (*Id.*) Thereafter, Lt. Lundy brought the emergency grievance to the intel office. (*See id.* at 15.)

On June 6, Officer A. Hall filed a disciplinary charge against Crawley for lying or giving a false statement to an employee. (*Id.*) Crawley states that Officer Hall relied on Lt. Lundy's

statements as the basis for the charge. But Crawley does not allege that Officer Hall knew that Lt. Lundy's statement was false. Moreover, in the disciplinary records which Crawley attached to his complaint, Warden Kanode notes that Officer Hall reviewed the video footage himself and discovered that "no assault took place" before he filed the disciplinary charge against Crawley. (ECF No. 1-1, at 18.) Based on the pleadings, the court cannot find that Crawley has stated a plausible claim that Officer Hall filed the disciplinary charge against Crawley as retaliation. Accordingly, the court will grant the defendants' motion to dismiss these claims.

### B. Claim #8 against Lt. Colna

In Claim #8, Crawley alleges that Lt. Colna searched his cell on July 18, 2017, and "illegally confiscated" all of Crawley's documents related to his assault allegations against Officer Crotts "in an attempt to preclude [him] from proving his claims against [Officer] Crotts." (ECF No. 1, at 3.) Crawley argues that Lt. Colna retaliated against him by attempting to deny his access to the courts.

In a regular grievance attached to his complaint, Crawley states that on May 8, 2017, when Crawley reported the May 3 assault by Officer Crotts, Lt. Colna "threatened [Crawley] with physical violence if [he] pursued such claim." (ECF No. 1-1, at 2.) Just over two months later, Crawley alleges that Lt. Colna confiscated all of his documents pertaining to his claim against Officer Crotts, including documents he "paid to have copied, affidavits, personal mail, and legal documents." (*Id.* at 7.) Crawley also states that those documents were contemporaneously needed for "legal purposes." (*Id.*) Accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of Crawley, the court

concludes that Crawley has alleged a plausible retaliation claim against Lt. Colna. Accordingly, the court will deny the defendants' motion to dismiss as to this claim.

### C.  Claim #11 against Officer Adkins

In Claim #11, Crawley alleges that Officer Adkins filed a "bogus" disciplinary charge against Crawley for "failing to follow institutional count procedures or interfering with count," "because of [Crawley's] continuous pursu[it] of criminal actions against [Officer] Crotts and complaints against [Adkins'] supervisor Lt. Colna . . . ." (ECF No. 1, at 3.) Crawley argues that this constitutes retaliation.

According to the disciplinary offense report attached to Crawley's complaint, on July 19, 2017, Officer Adkins and another officer were performing count procedures in Crawley's housing unit and, when they approached Crawley's cell, he was "still laying in bed and would not stand for count." (ECF No. 1-1, at 21.) Crawley does not state why he believes the disciplinary charge was "bogus" or explain what causal link exists between the charge and Crawley's pursuit of criminal charges against Crotts (other than his conclusory assertion of retaliation). In the disciplinary appeal paperwork that Crawley submitted with his complaint, Warden Kanode notes that camera footage was reviewed and revealed that the officer knocked on Crawley's door as he went past it, then had to stop at the cell, "which indicates [that Crawley was] not standing." (*Id.* at 26.) In addition, Warden Kanode states that movement was also "seen on the top bunk" in the video, which also indicates that he was not standing. (*Id.*) Based on the pleadings, the court cannot find that Crawley has stated a plausible claims that Officer Adkins filed the disciplinary charge against Crawley as retaliation. Accordingly, the court will grant the defendants' motion to dismiss this claim.

### D. Claim #14 against Officer A. Hall

In Claim #14, Crawley alleges that on July 21, 2017, Officer A. Hall "deliberately filed a bogus" charge of "conspiracy or making plans to commit/possession of unauthorized drugs" against him "for the sole purpose of increasing [his] security level, because [he] refused to drop a criminal complaint against [Officer] Crotts for assault. . . ." (ECF No. 1, at 4.) Crawley argues that this constitutes retaliation.

According to the disciplinary offense report attached to Crawley's complaint, Officer A. Hall was "reviewing" Crawley when he "came across" a workbook where Crawley had written that he "wanted to obtain a cell phone to talk to conduct business without using codes." (ECF No. 1-1, at 28.) Officer A. Hall also found two pages of "hand[-]written codes for drugs." (*Id.*) Based on these discoveries, Officer Hall charged Crawley with a disciplinary offense for "conspiring or making plans to commit/possession of unauthorized drugs." (*Id.*)

Crawley summarily alleges that Officer A. Hall filed the charge in retaliation for Crawley pursuing criminal charges against Officer Crotts, but he does not adequately allege a causal relationship between his pursuit of criminal charges and Officer Hall's filing of a disciplinary charge. He also provides no basis for his contention that Officer Hall's "sole purpose" in charging him with the institutional offense was to increase his security level. Based on the pleadings, the court cannot find that Crawley has states a plausible claim that Officer A. Hall filed the disciplinary charge against Crawley as retaliation. Accordingly, the court will grant the defendants' motion to dismiss this claim.

### E.  Claim #17 against DHO MacVean

In Claim #17, Crawley alleges that DHO MacVean was "in c[a]hoots" with Officer A. Hall when he accepted Officer Hall's testimony about the "conspiring or making plans to commit/possession of unauthorized drugs" disciplinary charge, even though Officer Hall's testimony was "deficient" in regard to the "correct offense date, discovery location, or witness to what was found." (ECF No. 1, at 4.) Crawley argues that constitutes conspiracy to retaliate.

In the disciplinary offense appeal paperwork attached to Crawley's complaint, Warden Kanode responded to Crawley's complaints about Officer Hall's testimony. The appeal response indicates that Crawley stated that he was charged with the disciplinary offense on July 21, 2017, but that during the hearing Officer Hall testified that he was "in possession of the property on July 20." (ECF No. 1-1, at 36.) Warden Kanode, however, stated that he reviewed the recording of the hearing, and Officer Hall "did not say" that he was in possession of the property on July 20. (*Id.*) Instead, Officer Hall examined Crawley's property on July 21, as indicated on the disciplinary offense report. Warden Kanode also noted that Crawley complained that Officer Hall failed to provide Crawley with the "what, when, where, and how" of the offense, but the answers to these questions were "included in the written disciplinary report." (*Id.* at 37.)

Crawley's bald assertion that DHO MacVean retaliated against him is insufficient to state a cognizable retaliation claim. Crawley has not identified a causal relationship between his pursuit of criminal charges against Officer Crotts and DHO MacVean's acceptance of Officer Hall's testimony concerning this disciplinary charge. Based on the pleadings, the court

cannot conclude that Crawley has stated a plausible claim that DHO MacVean retaliated against Crawley. Accordingly, the court will grant the defendants' motion to dismiss this claim.

### F. Claim #20 against Warden Kanode

In Claim #20, Crawley alleges that Warden Kanode demonstrated that he was "in c[a]hoots" with Officer A. Hall and DHO MacVean when he upheld Crawley's disciplinary conviction for "conspiring or making plans to commit/possession of unauthorized drugs," despite insufficient evidence. (ECF No. 1, at 4.) Crawley argues that this was retaliation.

After Crawley was convicted of "conspiring or making plans to commit/possession of unauthorized drugs," he appealed, and Warden Kanode upheld the disciplinary conviction on appeal. (ECF No. 1-1, at 36−37.) Crawley's disagreement with Warden Kaonde's decision to uphold the conviction does not make the decision biased, retaliatory, or part of a conspiracy. Crawley's bald assertion that Warden Kanode retaliated against him is insufficient to state a cognizable retaliation claim. Crawley has not identified a causal relationship between his pursuit of criminal charges against Officer Crotts and Warden Kanode upholding the disciplinary charge. The court cannot conclude that Crawley has stated a plausible claim that Warden Kanode upheld he disciplinary conviction as retaliation. Accordingly, the court will grant the defendants' motion to dismiss this claim.

### G. Claim #21 against DHO MacVean

In Claim #21, Crawley alleges that during his disciplinary hearing for the charge of "failing to follow institutional count procedures or interfering with count," DHO MacVean "refused to permit" Crawley to review the relevant video footage "in order to cover-up [Crawley's] innocence" for the "purpose of sanctioning a bogus charge because [Crawley]

failed to drop a criminal complaint against [Officer] Crotts for assault. . . ." (ECF No. 1, at 5.) Crawley argues that this constitutes retaliation.

Crawley's bald assertion that DHO MacVean retaliated against him is insufficient to state a cognizable retaliation claim. Crawley has not identified a causal relationship between his pursuit of criminal charges against Officer Crotts and DHO MacVean's alleged refusal to allow Crawley to review the video footage. He also does not allege a basis to support his contention that DHO MacVean was attempting to "cover-up" Crawley's innocence. To the contrary, as previously noted, Warden Kanode reviewed the video footage and determined that it supported his conviction for failing to follow institutional count procedures. (ECF No. 1-1, at 26.) Moreover, there is nothing to suggest that DHO MacVean knew anything of the alleged incident involving Officer Crotts, much less of any criminal claims filed by Crawley. Therefore, the court cannot find that Crawley has stated a plausible claim that DHO MacVean retaliated against him. Accordingly, the court will grant the defendants' motion to dismiss this claim.

### H. Claim #22 against Warden Kanode

In Claim #22, Crawley alleges that Warden Kanode retaliated against him for filing a criminal complaint against Officer Crotts by upholding Crawley's disciplinary conviction for "failing to follow institutional count procedures or interfering with count" with "clear knowledge [that] video footage supported [Crawley's] innocence." (ECF No. 1, at 5.)

Although Crawley alleges that the video footage supports his innocence, Warden Kanode stated that the video footage actually supports his disciplinary conviction. But, even if the video footage did not support Crawley's conviction, there is no basis for the court to

conclude that Warden Kanode's appeal determination was based on an intent to retaliate against Crawley. A court need not accept plaintiff's "unwarranted deductions," "rootless conclusions of law" or "sweeping legal conclusions cast in the form of factual allegations." *Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996). A claim of retaliation must include specific facts to indicate Warden Kanode's intent to retaliate and a causal relationship between the intent to retaliate and an adverse act. Because there is no factual support for a retaliation claim, the court cannot conclude that Crawley has stated a plausible retaliation claim. Accordingly, the court will grant the defendants' motion to dismiss this claim.

## I. Claim #32 against Lt. Lundy

In Claim #32, Crawley alleges that on July 20, 2017, Lt. Lundy authorized a "bogus" disciplinary charge against Crawley for "threatening to commit/aggravated assault upon a non-offender," "with prior knowledge [that Crawley] was being placed in segregation to deter [him] from pursuing the criminal complaint against Officer Crotts . . . ." (ECF No. 1, at 6.) Crawley argues that this constitutes retaliation.

According to the disciplinary offense report attached to Crawley's complaint, on July 20, Crawley left the unit manager's office after Officer Redmond had "read his charge to him." (ECF No. 1-1, at 40.) Once he was in the hallway, Crawley started making comments about building staff. Sgt. Cutchens asked him to step back into his office to speak with him about the issue, but Crawley opened the door and "began cussing toward" Sgt. Cutchens, saying: "[Y]ou and your staff are out to get me, this whole building is fucking with me[,] holding a black man down with all these whores thinking men have to listen to them." (*Id.*) Sgt. Cutchens told Crawley that his language "would not be tolerated and he needed to calm down." (*Id.* at

40–41.) Crawley threw some papers on the desk and yelled out: "[Y]ou or your officers are not safe if you keep letting them charge me, especially all these trifling ass bitches. I'm going to put something sharp on the next one that looks at me wrong like this bitch Redmond." (*Id.* at 41.) Sgt. Cutchens states that he wrote the disciplinary charge against Crawley because of the "direct threat towards staff and the mention of a weapon." (*Id.*)

Crawley does not allege any facts that would support his assertion that his disciplinary charge was without factual support or that Lt. Lundy knew that the disciplinary charge was without any factual support. To the extent that Lt. Lundy did not believe that the charge was factually supported, Crawley has not identified a causal relationship between his pursuit of criminal charges against Officer Crotts and Lt. Lundy authorizing the disciplinary charge. The court cannot find that Crawley has stated a plausible claim that Lt. Lundy authorized the disciplinary charge as retaliation. Accordingly, the court will grant the defendants' motion to dismiss this claim.

### J. Claim #33 against Lt. Colna

In Claim #33, Crawley alleges that on June 6, 2017, Lt. Colna "authorized the filing of a bogus" disciplinary charge against Crawley for "lying or giving false information to an employee" in order to "deter" Crawley from filing a criminal warrant against Officer Crotts. Crawley argues that this constitutes retaliation.

As previously discussed with regard to Claims #3 and 34, Crawley filed an emergency grievance alleging that Officer Crotts had assaulted him and Lt. Lundy responded to the emergency grievance, stating that he had reviewed the camera footage and that "at no time did Officer Crotts touch you in any way." (ECF No. 1-1, at 1.) Lt. Lundy brought the emergency

grievance to the intel office, and Officer A. Hall filed the disciplinary charge against Crawley. Crawley states that Officer A. Hall relied on a statement by Lt. Lundy that was written in the emergency grievance in deciding to file the charge against Crawley, but he does not allege that Officer Hall knew the statement that he was using was false. And Crawley also does not allege that Lt. Colna knew that the statement was false when he authorized the filing of the disciplinary charge. Moreover, the disciplinary records reflect that Officer Hall reviewed the video footage himself and discovered that "no assault took place" before he filed the disciplinary charge against Crawley. (ECF No. 1-1, at 18.) Based on the pleadings, the court cannot find that Crawley has stated a plausible claim that Lt. Colna authorized the disciplinary charge against Crawley as retaliation. Accordingly, the court will grant the defendants' motion to dismiss this claim.

## IV.

Crawley alleges that Warden Kanode, DHO MacVean, and Regional Administrator Elam denied him due process in connection with his disciplinary hearings and appeals. The defendants have moved to dismiss several of the due process claims. The court concludes that some of Crawley's allegations against the defendants fail to state a plausible federal claim and some do state a plausible claim. Therefore, the court will grant in part and deny in part the defendants' motion to dismiss these claims.

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without

due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). When the punishment does not cause the original sentence to be enhanced, protected interests will generally be limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

While prisoners are afforded rights of due process, they are necessarily balanced with the interests of institutional security. *Wolff v. McDonnell*, 418 U.S. 539 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. To provide constitutionally sufficient procedural due process, a disciplinary proceeding must provide: (1) advance written notice of a claimed violation at least 24 hours before any disciplinary hearing; (2) the ability of the prisoner to call witnesses and present documentary evidence at the disciplinary hearing; (3) a written statement of the evidence relied upon by the factfinder and the reasons for the disciplinary action taken. *See Dilworth v. Adams*, 841 F.3d 246, 253 (4th Cir. 2016) (citing *Wolff*, 418 U.S. at 563−66). To provide constitutionally sufficient substantive due process, a disciplinary offense finding must be "supported by some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).

### A. Claim #7 against Warden Kanode

In Claim #7, Crawley alleges that Warden Kanode demonstrated his bias when he upheld the disciplinary conviction against Crawley for "lying or giving false information to an employee" in spite of Crawley having "established a violation of [his] right[] to call witnesses in his defense." (ECF No. 1, at 3.) Crawley alleges that this constitutes a violation of due process.

In the disciplinary records attached to Crawley's complaint, it reflects that Crawley indicated that he wished to request witnesses and documentary evidence and that neither of those were denied. (*See* ECF No. 1-1, at 15–16.) In the appeal response, Warden Kanode stated that no witness or documentary evidence request forms were received for the hearing. (*Id.* at 18.) But they reviewed video footage of the incident. Crawley fails to identify any witness that he was denied or allege what beneficial testimony would have provided. Crawley's penalty for the disciplinary conviction was cell restriction for 30 days. Because the penalty did not cause his original sentence to be enhanced and he has not described an atypical and significant hardship, the court cannot conclude that Crawley's due process rights were implicated. Further, even if they were, he has not alleged that he submitted any witness request forms that were denied. Based on the pleadings, the court cannot conclude that Crawley has stated a plausible claim that Warden Kanode denied him due process in upholding the disciplinary conviction on appeal. Accordingly, the court will grant the defendants' motion to dismiss this claim.

## B. Claim #15 against DHO MacVean

In Claim #15, Crawley alleges that on July 31, 2017, DHO MacVean denied Crawley "his staff witness (Whitaker)" during Crawley's disciplinary hearing on the charge of "conspiring or making plans to commit/possession of unauthorized drugs," because DHO MacVean "felt he could provide testimony as to what Ms. Whitaker would have testified to." (ECF No. 1, at 4.) Crawley argues that this is a due process violation.

Due process requires, among other things, that the inmate be provided an opportunity to call witnesses and present evidence in his defense, so long as it is "consistent with

institutional safety and correctional goals." *Hill*, 472 U.S. at 454 (citing *Wolff*, 418 U.S. at 563−67. Based on the disciplinary offense and appeal records attached to Crawley's complaint, it appears that Crawley was accused of writing in his workbook that he wished to obtain a cell phone; Ms. Whitaker was the instructor of the class where the workbook was used; Crawley alleges that the notes were made in response to Ms. Whitaker's instruction that the class imagine a particular situation; Crawley alleges that the notes were not based on a real-life situation; Crawley sought to call Ms. Whitaker so she could testify that she had instructed the class as he described; DHO MacVean refused to call Ms. Whitaker because he used to instruct that class himself and he "never asked offenders to put fake information in the workbook." (ECF No. 1-1, at 32 & 36.) Accepting all factual allegations in the complaint and attachments as true and drawing all reasonable inferences in Crawley's favor, the court concludes that he has stated a plausible due process claim against DHO MacVean concerning the denial of this witness. Accordingly, the court will deny defendants' motion to dismiss this claim.

### C. Claim #16 against DHO MacVean

In Claim #16, Crawley alleges that on July 31, 2017, DHO MacVean's "acceptance" of the charge against Crawley for "conspiring or making plans to commit/possession of unauthorized drugs," even though it "clearly deprived plaintiff of prior Notice of the offense" and "contained no location of discovery of the alleged offense," violated his right to due process (ECF No. 1, at 4.)

The disciplinary charge against Crawley for "conspiring or making plans to commit/possession of unauthorized drugs," was written on July 21, 2017, and indicated that the date of the offense was the same day. (ECF No. 1-1, at 28.) The disciplinary offense report

was served on Crawley on July 21, although he "refused" to acknowledge service. (*Id.*) He did, however, sign a declination of a penalty offer on the charge that day, demonstrating that he received notice of the charge on July 21. (*Id.* at 29.) A hearing on the charge was held on July 31, 10 days after Crawley was notified of the charge. Accordingly, the court finds that Crawley had sufficient notice of the charge. In addition, the description of the offense on the disciplinary offense report indicated that the notes about wanting a cell phone were in his workbook. Although it did not describe where the workbook was found, the court cannot find that Crawley has stated a plausible claim that DHO MacVean violated Crawley's right to due process because the disciplinary offense report omitted this specific detail. Accordingly, the court will grant the defendants' motion to dismiss this claim.

### D. Claim #18 against DHO MacVean

In Claim #18, Crawley alleges that DHO MacVean "demonstrated bias" during Crawley's hearing on the "conspiring or making plans to commit/possession of unauthorized drugs" charge by "allowing the reporting officer to change the offense date during the hearing, sanctioning the illegal search, [and] failing to request to see the drug codes documents allegedly found before rendering a decision." (ECF No. 1, at 4.) Crawley argues that this constitutes a violation of due process.

Although Crawley does not provide details about his allegation that the reporting officer changed the date, the disciplinary appeal response indicates that Crawley stated he was charged with the disciplinary offense on July 21, 2017, but that during the hearing, Officer Hall testified that he was "in possession of the property on July 20." (ECF No. 1-1, at 36.) In the appeal response, however, Warden Kanode stated that he reviewed the recording of the

hearing and Officer Hall "did not say" that he was in possession of the property on July 20. (*Id.*) Instead, Officer Hall examined Crawley's property on July 21, as indicated on the disciplinary offense report. Crawley also does not explain how the search that discovered the relevant documents was "illegal." Crawley has no cognizable expectation of privacy in his prison cell, and thus, the Fourth Amendment offers no protection against such a search and seizure. *See DeBlasio v. Johnson*, 128 F. Supp. 2d 315, 325 (E.D. Va. 2000) ("[T]he Fourth Amendment does not establish a right to privacy in prisoners' cells"); *Hudson v. Palmer*, 468 U.S. 517, 528 n. 8 (1984) (recognizing the same about a seizure of property during the search of a cell). Finally, it is unclear from the disciplinary records whether DHO MacVean personally reviewed Crawley's writings, but at the very least Officer Hall testified as to their contents.

When alleging that a DHO was biased, "[i]n order to prevail in a deprivation of due process claim, a defendant must show a level of bias that made 'fair judgment impossible.'" *Rowsey v. Lee*, 327 F.3d 335, 341 (4th Cir. 2003) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994). Government officials, including DHOs, are "presumed to act in good faith." *Worrell v. Deboo*, No. CIV.A. 5:07CV90, 2009 WL 1423923, at *3 (N.D.W. Va. May 20, 2009) (quoting *Bridge v. United States Parole Comm'n*, 981 F.2d 97, 106 (3d Cir.1992)). DHOs are "entitled to a presumption of honesty and integrity," and "the constitutional standard for impermissible bias is high." *Lacy v. Young*, No. 5:20cv582, 2021 U.S. Dist. LEXIS 250534, at *12−14 (S.D. W. Va. Nov. 16, 2021) (citing *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir.2003)). Accordingly, "prisoners' claims of bias and retaliation are to be viewed with skepticism." *Wheeler v. Perdue*, No. 1:14CV36, 2015 WL 366412, at *8 (N.D.W. Va. Jan. 27, 2015) (citing *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir.1996)).

For this court to find that the DHO was biased against Crawley, "there must be some substantial countervailing reason to conclude that [he was] actually biased with respect to factual issues being adjudicated." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004). Crawley has not alleged facts that state a plausible claim that DHO MacVean was biased at Crawley's disciplinary hearing. Accordingly, the court will grant the defendants' motion to dismiss this claim.

### E. Claim #19 against Warden Kanode

In Claim #19, Crawley alleges that, when Warden Kanode reviewed the appeal of the "conspiring or making plans to commit/possession of unauthorized drugs" conviction on August 29, 2017, he failed to overturn the conviction. Crawley claims that Warden Kanode had knowledge that the conviction lacked proper notice, had multiple "dates of discovery of the offense," and was an illegal search. (ECF No. 1, at 4.) Crawley argues that Warden Kanode's failure to overturn makes him "complicit" in all of the procedural violations and, therefore, he violated Crawley's right to due process. (*Id.*)

As previously discussed with regard to Claims #16 and 18, Crawley had adequate notice of the charge and he has not alleged facts to demonstrate an issue with the date of discovery or the legality of the search. The court concludes that there is "some evidence" to support the disciplinary conviction. To the extent Crawley disagrees with the appeal decision, he has not stated a plausible claim that Warden Kanode violated his right to due process. Accordingly, the court will grant defendants' motion to dismiss this claim.

## F. Claim #23 against Warden Kanode

In Claim #23, Crawley alleges that Warden Kanode violated his right to due process by upholding Crawley's disciplinary conviction for "failing to follow institutional count procedures or interfering with count" after viewing the "exculpatory" video footage. (ECF No. 1, at 5.)

Although Crawley alleges that the video footage is exculpatory, Warden Kanode stated in the disciplinary appeal response that the video footage actually supports Crawley's conviction. In addition, the DHO reviewed the video footage before determining that Crawley was guilty of the offense. (ECF No. 1-1, at 23.) The court concludes that the conviction is supported by "some evidence" and, to the extent Crawley disagrees with the appeal decision, he has not alleged a plausible due process violation. Accordingly, the court will grant the defendants' motion to dismiss this claim.

## G. Claim #24 against Regional Administrator Elam

In Claim #24, Crawley alleges that on November 8, 2017, Regional Administrator Elam failed "to provide the plaintiff with [a] reply to each contention raised" in Crawley's appeal of his disciplinary conviction for "conspiring or making plans to commit/possession of unauthorized drugs." (ECF No. 1, at 5.) Crawley argues that Regional Administrator Elam violated his right to due process.

Crawley was convicted of the disciplinary offense of "conspiring or making plans to commit/possession of unauthorized drugs" on July 31, 2017. (ECF No. 1-1, at 30.) Crawley appealed, and Warden Kanode responded to each of the nine points raised in Crawley's appeal on August 29, 2017. (*See id.* at 36−37.) Crawley further appealed and on November 8, 2017,

Regional Administrator Elam responded that "[a]fter considering [Crawley's] appeal," it was "determined that the Warden's response . . . was both accurate and complete, and as such, the issue will not be addressed a second time nor will new contentions be answered." (*Id.* at 38.) Elam noted that if Crawley had wanted new issues addressed, he should have raised them in his Level I appeal. (*Id.*) Accordingly, Elam upheld the disciplinary conviction.

Crawley has not alleged any constitutional violation by Regional Administrator Elam. Instead, he merely asserts that Elam did not adequately address the merits of each and every concern that Crawley had raised on the appeal of his disciplinary conviction. But due process does not require the opportunity to appeal prison disciplinary decisions. *See Wolff*, 418 U.S. at 563−70; *Morales Mancia v. Elam*, No. 7:19cv00625, 2021 WL 4164686, at *5 n.4 (W.D. Va. Sept. 13, 2021) ("Because *Wolff* did not recognize a due process right for an appeal from a disciplinary action, I need not consider this additional evidence [submitted by the petitioner], because its effect, or lack thereof, on the outcome of the appeal proceedings did not implicate any constitutionally protected right."); *Porter v. Warden of FCI Edgefield*, No. 9:20cv2002-DCC-MHC, 2020 WL 8271604, at *5 (D.S.C. Oct. 27, 2020) (noting that "a prisoner has no federal due process rights in the appeal process" and "*Wolff* does not mandate that prison officials provide inmates an opportunity to appeal disciplinary hearing findings" (D.S.C. Oct. 27, 2020) (Report and Recommendation), *adopted by* 2021 WL 274309 (D.S.C. Jan. 27, 2021). Moreover, even assuming that the appeal review did not follow VDOC operating procedures to the letter, this alone does not give rise to a constitutional violation. *See Riccio v. City of Fairfax, VA,* 907 F.2d 1459, 1469 (4th Cir. 1990). Accordingly, the court will grant the defendants' motion to dismiss this claim.

### H. Claim #9 against Lt. Colna

In Claim #9, Crawley alleges that Lt. Colna violated his right to due process when he "illegal[ly]" confiscated Crawley's documents and failed to return them in violation of VDOC Operating Procedure ("OP") 802.1. (*Id.* at 3.) Violations of prison operating procedures, however, do not implicate federal due process rights and do not state cognizable claims under § 1983. *Riccio,* 907 F.2d at 1469. Accordingly, the court will grant the defendants' motion to dismiss this claim

### V.
### Claim #25 against Disciplinary Appeals Unit Manager Stapleton

In Claim # 25, Crawley alleges that Disciplinary Appeal Unit Manager Stapleton made the recommendation to uphold Crawley's institutional conviction for "conspiring or making plans to commit/possession of unauthorized drugs," and thus "became complicit in each violation for failure to act." (ECF No. 1, at 5.)

A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). It appears that Crawley is contending that Stapleton's actions as the manager of the disciplinary appeal unit in recommending that his conviction be upheld is itself an unconstitutional act, because it ratified all of the other alleged failures to act. But this would amount to an assertion of liability through *respondeat superior* or through supervisory liability. Generally, the doctrine of *respondeat superior* is inapplicable in § 1983 causes of action. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

- 27 -

To the extent that Crawley is attempting to bring a claim of supervisory liability, he must be able to show that: the official was actively or constructively aware of a pervasive, unreasonable risk of harm from a specified source; the official was deliberately indifferent to that risk; and that there exists an affirmative causal link between the supervisor's inaction and a constitutional injury. *Campbell v. Angelone*, 2004 WL 5310019, at *2 (W.D. Va. Apr. 16, 2004) (citing *Carter v. Morris*, 164 F.3d 215 (4th Cir. 1999)). Crawley has made no such showing here. There is no indication that Stapleton would, or should have, known that the institutional conviction was "bogus" or otherwise was not supported by the evidence except for whatever assertions Crawley made in his appeal. Accordingly, the court will grant defendants' motion to dismiss this claim.

## VI.
## Claims #26, 28, 29, and 30 against Officers Murray, Garcia, and Stidham, Lt. Richardson, and UM B. Hall

In Claims #26, 28, 29, and 30, Crawley alleges that Officers Murray, Garcia, and Stidham, Lt. Richardson, and UM B. Hall denied him outside recreation and showers while he was in the segregation unit or knew that he was being denied these things and "took no action to correct" it because Crawley had filed a criminal complaint against Officer Crotts. (ECF No. 1, at 5−6.) Crawley alleges that their actions or inaction violated his right to equal protection.[4] The court concludes that Crawley's allegations fail to state cognizable federal claims and, therefore, will grant the defendants' motions to dismiss these claims.

---

[4] Crawley also alleges retaliation claims based on these same allegations against Officers Murray and Garcia, Lt. Richardson, and UM B. Hall (Claims #27-30), but defendants have not moved to dismiss these retaliation claims and, thus, the court does not address them in this opinion.

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Under the Equal Protection Clause, "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). A plaintiff also must set forth "specific, non-conclusory factual allegations that establish improper motive." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* In the prison context, the appropriate level of scrutiny to apply in equal protection claims is one of "reasonableness" in accordance with the factors identified in *Turner v. Safley*, 482 U.S. 78 (1987). *Morrison*, 239 F.3d at 654–55. *Accord Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002).

Crawley does not allege any facts to demonstrate that he was treated differently from others with whom he is similarly situated or that the unequal treatment was the result of intentional or purposeful discrimination. Accordingly, the court will grant the defendants' motion to dismiss the equal protection claims.

## VII.
## Claim #31 against Sgt. Cutchens

In Claim #31, Crawley alleges that Sgt. Cutchens deliberately filed a bogus disciplinary charge against him to "deter" him from pursuing a criminal warrant against Officer Crotts. (ECF No. 1, at 6.) This claim is duplicative of Claim #12 in which Crawley alleges that on July

20, 2017, Sgt. Cutchens threatened and insulted him and told him that his actions against Officer Crotts would not be tolerated and then placed a false institutional charge against him. (*Id.* at 3.) The defendants have answered Claim #12 (*see* ECF No. 40) and, thus, Claim #31 will be dismissed.

## VIII.

For the reasons stated, defendants' motion to dismiss is granted in part and denied in part. Accordingly, only the following claims remain:

- Claim #1- Excessive force and assault battery by Officer Crotts;

- Claim #2- Threats and retaliation by Lt. Lundy;

- Claim #4- Due process violation by DHO Wolfe;

- Claim #5- Due process violation by DHO Wolfe;

- Claim #6- Retaliation by UM Doss;

- Claim #8- Retaliation by Lt. Colna;

- Claim #10- Retaliation by Investigator Horton;

- Claim #12- Retaliation by Sgt. Cutchens;

- Claim #13- Excessive force and retaliation by Officer Redmond;

- Claim #15- Due process violation by DHO MacVean;

- Claim #27- Retaliation by Officer Murray;

- Claim #28- Retaliation by Officer Garcia;

- Claim #29- Retaliation by Lt. Richardson;

- Claim #30- Retaliation by UM B. Hall; and

- Claim #35- Cruel and unusual living conditions by UM B. Hall.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 30th day of March, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE