IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DAVID CRAWLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:19cv00474 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| B. KANODE, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

David Crawley, a former Virginia inmate,[1] filed this civil action under 42 U.S.C. § 1983, alleging 35 different claims—including excessive force, retaliation, due process violations, and equal protection violations—against 19 defendants. By memorandum opinion and order entered March 30, 2022, the court granted in part and denied in part a motion to dismiss of some of the defendants. (*See* ECF Nos. 63 and 64.) After the court's ruling on the motion to dismiss, 15 claims remained pending against 13 defendants. This matter is currently before the court on the defendants' motion for summary judgment. Having reviewed the record, the court will grant in part and deny in part the defendants' motion.

## I.

The facts relevant to Crawley's remaining claims begin with an alleged physical assault on May 3, 2017, while he was incarcerated at River North Correctional Center ("River North"), followed by claims that he was subjected to retaliatory actions, false disciplinary charges, and a second physical assault.

---

[1] Crawley was incarcerated when he filed this action but has since been released. (*See* ECF No. 53.)

Crawley alleges that on May 3, 2017, while he was waiting for medication in the vestibule, Officer Crotts struck Crawley with a closed fist repeatedly in Crawley's shoulder. Crawley asserts that Officer Crotts was also holding an "item" at the time and that the item repeatedly "smacked" Crawley in his head, face, and neck. (Compl. at 2 [ECF No. 1].)

Nearly a month later, on June 2, 2017, Crawley filed an emergency grievance stating that he was being denied grievance forms and therefore he could not file a complaint against Officer Crotts for the alleged assault. On the same day, Lt. Lundy responded to the emergency grievance and stated that, having reviewed the rapid eye video, at no time did Officer Crotts touch Crawley in any way, and Crawley's statements about the assault were "nothing but false." (Emer. Grievance [ECF No. 1-1, at 1].) Crawley alleges that Lt. Lundy also threatened Crawley that if he did not withdraw his emergency grievance, Lt. Lundy would "make sure [Crawley] regret[s] it." (Compl. at 2 [ECF No. 1].) Unit Manager ("UM") Doss was present when this "threat" was allegedly made. (*Id.*)

On June 6, 2017, based on Crawley's allegedly false statements in the emergency grievance, an officer charged Crawley with a disciplinary offense for lying or giving false information to an employee. On June 28, 2017, a disciplinary hearing was held on this charge. Crawley claims that Disciplinary Hearing Officer ("DHO") Wolfe "arbitrarily deprived" Crawley of the opportunity to submit declarations of witnesses from the alleged assault and refused to review the video footage personally. (*Id.* at 2.) DHO Wolfe found Crawley guilty of the disciplinary charge and imposed 30 days of cell restriction as a penalty. Crawley claims that UM Doss subsequently "approved" Crawley's disciplinary conviction even though he "knew

[it] was false" because he was retaliating against Crawley for Crawley's refusal to "drop the assault complaint against Officer Crotts." (*Id.*)

On July 18, 2017, Lt. Colna searched Crawley's cell. Crawley alleges that Lt. Colna "illegally" confiscated two folders of "legal documents" related to the alleged May 3 assault. (*Id.* at 3.) Crawley claims that these folders were never returned to him "in an attempt to preclude [him] from proving his claims against [Officer] Crotts." (*Id.*) Crawley alleges that, on the same day, Investigator Horton threatened Crawley that it "wouldn't end well" if Crawley did not stop "pursuing action against" Officer Crotts. Investigator Horton also allegedly told Crawley to "forget the two folders of documents." (*Id.*)

On July 20, 2017, Sgt. Cutchens called Crawley to his office and allegedly threatened and insulted Crawley, told Crawley that his "actions against" Officer Crotts would not "be tolerated," demanded that Crawley "be locked up," and charged Crawley with a "bogus" disciplinary charge for threatening assault. (*Id.*) Crawley claims that Officer Redmond was in the office with Sgt. Cutchens and Crawley, and that she placed Crawley in handcuffs, punched him in his genitals with her fist, and said, "that's what we call an assault ni\*\*er." (*Id.*) Lt. Lundy "authorized the processing of [the] bogus [disciplinary] charge" even though he knew that Crawley was being placed in segregation to deter him from pursuing the criminal complaint against Officer Crotts. *(Id.* at 6.*)*

The next day, an officer charged Crawley with a disciplinary infraction for "conspiracy or making plans to commit/possession of unauthorized drugs" after finding both a workbook and loose pages where Crawley had written codes for drugs and that he wanted to obtain a

cell phone to "conduct business without using codes." (Disciplinary Offense Rep. [ECF No. 1-1, at 28].)

A disciplinary hearing was held on July 31, 2017. Crawley alleges that DHO MacVean denied Crawley his staff witness because MacVean "felt he could provide testimony as to what [the witness] could have testified to." (Compl. at 4.) DHO MacVean found Crawley guilty of the offense based on his writings in the workbook and the two pages of codes. DHO MacVean imposed a penalty of 180 days loss of good-conduct time and 30 days in segregation.

Crawley alleges that on July 22, 2017, Officer Murray visited Crawley's cell and informed him that, while he was housed in the segregation unit, he would not be receiving outside recreation or showers during Murray's shifts because of the criminal complaint Crawley had filed against Officer Murray's "buddy" Officer Crotts. (*Id.* at 5.) Crawley claims Officer Murray told him that his criminal complaint "threaten[ed] his friend['s] employment status" because it was a criminal complaint instead of remaining "in house with the [V]DOC." (*Id.*) Three days later, Officer Garcia allegedly went to Crawley's cell and informed Crawley that he would also not be receiving outside recreation or showers during Garcia's shifts, based on his criminal complaint against Officer Crotts. Subsequently, Lt. Richardson advised Crawley that he had "verified" that the two shifts had been "arbitrarily depriving" Crawley of outside recreation and showers for a month, even though Crawley had been complying with policy to be able to obtain these privileges. (*Id.* at 6.) Crawley claims that, despite acknowledging this, Lt. Richardson took no action to correct the "egregious injustice." (*Id.*) In addition, while Unit Manager ("UM") B. Hall was making rounds with Lt. Richardson one

day, Crawley advised UM Hall that he had been deprived of outside recreation and showers every day, but Hall failed to take any action to correct it.

At this stage, the following claims remain:[2]

- Claim #1- Excessive force and assault battery by Officer Crotts;

- Claim #2- Threats and retaliation by Lt. Lundy;

- Claim #4- Due process violation by DHO Wolfe;

- Claim #5- Due process violation by DHO Wolfe;

- Claim #6- Retaliation by UM Doss;

- Claim #8- Retaliation by Lt. Colna;

- Claim #10- Retaliation by Investigator Horton;

- Claim #12- Retaliation by Sgt. Cutchens;

- Claim #13- Excessive force and retaliation by Officer Redmond;

- Claim #15- Due process violation by DHO MacVean;

- Claim #27- Retaliation by Officer Murray;

- Claim #28- Retaliation by Officer Garcia;

- Claim #29- Retaliation by Lt. Richardson;

- Claim #30- Retaliation by UM B. Hall; and

- Claim #35- Cruel and unusual living conditions by UM B. Hall.

---

[2] The court uses the numbers that Crawley assigned to his claims in his complaint and that the court and the parties have used throughout the litigation of this action.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World*

*Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

The defendants argue that Crawley failed to exhaust available administrative remedies as to 12 of his remaining 15 claims before filing this action, as required by 42 U.S.C. § 1997e(a). The court agrees as to 10 of the claims but disagrees as to 2 of them. Therefore, the court will grant in part and deny in part the defendants' motion for summary judgment as to these claims.

### A.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 & 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust

all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

## B.

In support of the defendants' motion for summary judgment, Grievance Coordinator Brian Walls provided: an affidavit; Virginia Department of Corrections' ("VDOC") Offender Grievance Procedure, Operating Procedure ("OP") 866.1; and Crawley's relevant grievance records. (*See* ECF No. 72-1.) OP 866.1 details the grievance process by which offenders must resolve complaints, appeal administrative decisions, and challenge the substance of procedures. Grievance Coordinator Walls explains that the grievance process provides corrections staff a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. There is no dispute that the 12 remaining excessive force and retaliation claims raised in this action are subject to the well-established requirements of OP 866.1.

Prior to submitting a regular grievance, an inmate must demonstrate that he has made a good-faith effort to resolve his complaint informally. According to OP 866.1, the first stage of the informal complaint procedure is for the inmate to verbally communicate his concerns to staff. If the issue is not resolved or the inmate is not satisfied with the resolution, he

generally must document his good-faith effort using an informal complaint form. Once an inmate files an informal complaint form, it is logged in VACORIS, the VDOC's computer-based offender information management system, and a receipt is issued to the inmate. Within 15 days of receipt of the informal complaint form, staff should respond to the informal complaint. If an inmate is not satisfied with the staff's response to the informal complaint, he may file a regular grievance. Or, if no response is given to the inmate within 15 days of the logging of the informal complaint form, the inmate may file a regular grievance, and he must attach the receipt of the informal complaint form to the grievance as documentation of his attempt to resolve the issue informally. The inmate is responsible for submitting the informal complaint in a timely manner to allow time for staff to respond within the time period allowed to file a regular grievance.

A regular grievance generally must be filed within 30 days from the date of the incident. Regular grievances are date-stamped on the working day they are received. If the grievance meets the criteria for acceptance, it is logged in VACORIS and receipt is issued to the inmate within two working days from the date the grievance is received. If the grievance does not meet the criteria for acceptance, the grievance is returned to the inmate within two working days of its receipt, along with an explanation for why the grievance was rejected at intake. Intake rejections can be appealed to the Regional Ombudsman within five calendar days of receipt. The Regional Ombudsman's review of the intake decision is the final level of review.

If a grievance is accepted at intake, it may proceed through up to three levels of review. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a § 1983 lawsuit. Level I reviews are conducted by the Warden or

Superintendent of the prison. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts a review of the regular grievance. The time limit for issuing a Level I response is 30 days, 20 days for a Level II response, and 20 days for a Level III response. Expiration of the time limit (including any authorized continuances) without issuance of a response at any stage of the process automatically qualifies the grievance for appeal.

## C.

**Claims #2, 6, 10, 12, and 28 — Retaliation by Lt. Lundy, UM Doss, Investigator Horton, Sgt. Cutchens, and Officer Garcia**

Grievance Coordinator Walls avers that Crawley did not file regular grievances concerning Claims #2, 6, 10, 12, and 28. Crawley has not provided any evidence to rebut Wall's affidavit concerning these claims. It is clear from the record that Crawley did not fully exhaust administrative remedies as to these claims. Therefore, the court considers whether administrative remedies were "available" to Crawley.

In his unverified response to the defendants' motion for summary judgment,[3] Crawley cursorily states that "all" of his grievance efforts were "arbitrarily obstructed." (ECF No. 86-1 at 2.) He also claims that he "had no safe legitimate way of ensuring any documents taken

---

[3] In response to the defendants' motion for summary judgment, Crawley filed a motion for summary judgment, a memorandum in support, his own declaration, and a declaration by another inmate. (*See* ECF No. 86.) The court notes, however, that none of these submissions are verified.

from his cell would make it to [their] destination." (ECF No. 86-2 at 1.) Although Crawley argues generally that the grievance procedure is sometimes obstructed, he does not demonstrate that he ever filed, or even tried to file, grievances as to Claims #2, 6, 10, 12, and 28. He also fails to make any factual showing that the grievance procedure was not available to him with regard to these claims. "Exhaustion of administrative remedies is mandatory, even where the inmate claims that exhaustion would be futile." *Reynolds v. Doe*, 431 F. App'x 221, 222 (4th Cir. 2011); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"); *Akins v. United States*, No. 3:04-23200-MBS-JRM, 2006 U.S. Dist. LEXIS 24256, at *7, 2006 WL 752845, at *2 (D.S.C. Mar. 22, 2006) ("An inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement."), *aff'd*, 202 F. App'x 592 (4th Cir. 2006). Accordingly, the court concludes that Crawley has not demonstrated that he was prevented from properly exhausting available administrative remedies "through no fault of his own" and, thus the court concludes that remedies were available to Crawley as to these claims. Finding no genuine dispute of material fact, the court concludes that Crawley failed to exhaust available administrative remedies as to Claims #2, 6, 10, 12, and 28 and, thus, the defendants are entitled to judgment as a matter of law as to these claims.

### D.

### Claim #13 — Excessive force and retaliation by Officer Redmond

Grievance Coordinator Walls asserts that on August 7, 2017, Crawley filed a regular grievance stating that he had been arbitrarily deprived of access to the telephone so he could report a sexual assault and that Officer Redmond punched him in the front of his "private

area" and another officer kneed him in the back of his right leg. (Walls Aff. ¶ 16 [ECF No. 72-1]; Enclosure G [ECF No. 72-1, at 56].) But that grievance was rejected at intake because Crawley failed to attach an informal complaint. Crawley appealed the intake decision and the decision was affirmed, noting that Crawley had failed to pursue the matter through the informal complaint process and that the grievance stated two issues in one grievance. (*Id.*) In his unverified response to the motion for summary judgment, Crawley generically states that he always attached complaints to his grievances.

First, Crawley's statement is not evidence because it is not verified. But, even if it were, the grievance was nevertheless improperly filed because it included more than one issue, in violation of OP 866.1. (*Id.* at ¶ 5.) Crawley also presents no evidence that remedies were not available "through no fault of his own." Finding no genuine dispute of material fact, the court concludes that Crawley failed to exhaust available administrative remedies as to Claim #13 and, thus, the defendants are entitled to judgment as a matter of law as to this claim.

### Claims #27, 29, 30, and 35 — Retaliation by Officer Murray, Lt. Richardson, and UM Hall; cruel and unusual living conditions by UM Hall

On September 13, 2017, Crawley filed a regular grievance stating that Lt. Richardson was a liar and that Lt. Richardson and others knew that Crawley was being denied showers and recreation in retaliation for having obtained a criminal warrant against Officer Crotts. Crawley also stated that UM Hall knew he was being denied showers and outside recreation. The grievance was rejected at intake because Crawley failed to attach the informal complaint demonstrating that he first attempted to use the informal process to resolve the complaint.

On appeal to the Regional Ombudsman, Crawley asserted that on September 10, 2017, he sent in another grievance which included the informal complaint, but it was never receipted.

The Regional Ombudsman affirmed the intake rejection, but also noted that the grievance was untimely filed. The court notes that even if Crawley did submit a grievance on September 10, 2017, with the informal complaint attached, as he alleged in his appeal, the grievance was nevertheless improperly filed because it was filed more than 30 days after the incident, in violation of OP 866.1. (*Id.* at ¶ 5−6.)

On September 18, 2017, Crawley filed a regular grievance complaining that Lt. Richardson's response to an informal complaint was false and that he had told various staff—including Lt. Richardson, Officer Murray, and UM Hall—that he was being denied showers and recreation in retaliation for having taken a criminal warrant out against Officer Crotts. This grievance was rejected at intake because the informal complaint was not attached. Grievance Coordinator Walls avers that Crawley did not resubmit the grievance with a copy of the informal complaint and he did not appeal the intake decision. (*Id.* at ¶ 17.) Crawley submits no evidence to rebut Walls' affidavit. Crawley also presents no evidence that administrative remedies were not timely available to him "through no fault of his own." Finding no genuine dispute of material fact, the court concludes that Crawley failed to exhaust available administrative remedies as to Claims #27, 29, 30, and 35 and, thus, the defendants are entitled to judgment as a matter of law as to these claims.

## E.

### Claim #1 — Excessive force and assault by Officer Crotts

Defendants argue that Crawley failed to exhaust administrative remedies as to the excessive force and assault claims against Officer Crotts. The court finds a dispute as to

whether administrative remedies were available to Crawley and, therefore, will deny the motion for summary judgment as to these claims.

Crawley filed an informal complaint on May 8, 2017, asking for video footage from May 3, 2017, to be saved and "held as evidence." (ECF No. 72-1 at 36.) The informal complaint did not mention any use of force, an assault, or Officer Crotts. Crawley filed a regular grievance on May 30, 2017, stating that on May 3, 2017, Officer Crotts struck him "several times" and that, when he reported the incident to Lt. Colna on May 8, he was threatened with physical violence. (ECF No. 1-1 at 2.) The grievance was rejected at intake because Crawley had not attached the informal complaint as required by policy. Crawley appealed the intake decision to the Regional Ombudsman and stated that he had submitted a "complaint" on May 8, 2017 "specifying that [he] was assaulted" and asking for the video to be held, but the complaint was "never receipted." (ECF No. 1-1 at 4.) The Regional Ombudsman affirmed the intake rejection on appeal.

On June 2, 2017, Crawley filed an emergency grievance stating that he was "arbitrarily deprived of submitting a complaint against" Officer Crotts based on the alleged May 3 assault. (Emer. Grievance [ECF No. 1-1 at 1].) He also stated that he had filed a complaint on the issue on May 8 and May 30, but neither complaint was receipted. The response to the emergency grievance indicated that it did "not meet the definition for an emergency" and that Crawley's statements were "nothing but false." (*Id.*)

On August 2, 2017, Crawley filed a regular grievance complaining that among documents confiscated from his cell on July 18, 2017, were declarations from witnesses who saw Officer Crotts assault him and "verification" that he submitted "complaints" about the

assault. (Reg. Grievance [ECF No. 72-1 at 41].) The grievance was rejected at intake because no confiscation of property form was attached and because it "appear[ed] to be" untimely. (*Id.* at 42.)

It is clear from the record that Crawley did not exhaust administration remedies as to his excessive force and assault claims against Officer Crotts, but the court finds a dispute as to whether administrative remedies were available to Crawley. The evidence before the court shows that on multiple occasions, Crawley complained about his complaints on this specific incident not being "receipted." He also submits that "verification" of these unreceipted complaints as well as declarations from witnesses to the alleged assault were all confiscated and never returned to him. The court finds a genuine dispute as to whether administrative remedies were available to Crawley on this issue and that this dispute precludes the court from granting summary judgment to the defendants on this claim.

## Claim #8 — Retaliation by Lt. Colna

Defendants argue that Crawley failed to exhaust administrative remedies as to the retaliation claim against Lt. Colna. The court finds a dispute as to whether administrative remedies were available to Crawley and, therefore, will deny the motion for summary judgment as to this claim.

On May 29, 2017, Crawley filed a regular grievance stating that Lt. Colna threatened him with "physical violence" after Crawley reported Officer Crotts's alleged assault to him. (Reg Grievance [ECF No. 1-1 at 2].) The grievance was rejected on appeal because no informal complaint was attached, and the intake decision was upheld on appeal.

On July 18, 2017, Crawley filed an informal complaint complaining that Lt. Colna had confiscated his property, including "affidavits" and "legal documents," but had not provided Crawley with a confiscation of property form. (Inf. Compl. [ECF No. 72-1 at 53].)

On July 19, 2017, Crawley filed another informal complaint asserting that Lt. Colna "harassed [him] and subjected [him] to retaliatory treatment." (Inf. Compl. [ECF No. 72-1 at 50].) Crawley asserted that Lt. Colna was acting with "personal animosity" toward him because he filed "a criminal complaint of assault on [Lt. Colna's] staff." (*Id.*) The July 25 response to the informal complaint denied that Crawley was "threatened or assaulted." (*Id.*)

At the end of July 2017,[4] Crawley filed a regular grievance stating that Lt. Colna was harassing him and subjecting him to "continuous retaliation." (Reg. Grievance [ECF No. 72-1 at 37].) The grievance was submitted with the July 19 informal complaint attached to it and also referred to confiscated documents. The grievance was rejected at intake on August 3 because no confiscation of property form was attached and because it appeared to be untimely as to the confiscation of property issue. Crawley did not appeal.

On August 7, 2017, Crawley filed another regular grievance stating that he was "accosted by Lt. Colna" and others and subjected to "strongarmed robbery" of his personal property through "physical/verbal intimidation in retaliation" for Crawley filing a criminal complaint against Officer Crotts. (Reg. Grievance [ECF No. 72-1 at 51].) This grievance was

---

[4] The grievance does not indicate the specific day in July that it was filed (it is dated 7/  /17), but the intake decision is dated August 3, 2017. (Reg. Grievance [ECF No. 72-1 at 37−38].) Because policy requires that the intake rejection must be returned to the inmate within two working days from the date of receipt (*see* Wall Aff. ¶ 5), the court will assume the grievance was filed at the end of July.

rejected at intake because an informal complaint was not attached, and the issue of the confiscated property was untimely filed. Crawley appealed and the intake decision was upheld.

On August 7, 2017, Crawley filed a second grievance claiming that he was subject to "retaliation and harassment orchestrated by Lt. Colna." (Reg. Grievance [ECF No. 72-1 at 48].) The grievance was rejected at intake as a request for services. Crawley appealed and it was upheld by the Regional Ombudsman, who stated that it was "generalized statements pertaining to an incident." (*Id.* at 49.)

It is clear from the record that Crawley did not exhaust administrative remedies as to his retaliation claim against Lt. Colna, but the court finds a dispute as to whether administrative remedies were available to Crawley. On July 19, Crawley filed an informal complaint stating that Lt. Colna was retaliating against him based on the incident involving Officer Crotts. At the end of July, Crawley filed a regular grievance, attaching the July 19 informal complaint and again stating that Lt. Colna was subjecting him to "continuous retaliation." The August 3 intake rejection of the grievance did not address Crawley's retaliation allegations and instead focused on a confiscated property issue by stating that there was no confiscation of property form attached and that the property confiscation issue "appear[ed]" to be untimely filed. Further, Crawley filed another grievance days later, again complaining that Lt. Colna was physically and verbally intimidating him in retaliation for the incident with Officer Crotts, but the grievance was again rejected at intake because no informal complaint or confiscation of property forms were attached and the confiscation of property had occurred more than seven days prior and was, therefore, untimely. The court finds a genuine dispute as to whether

Crawley was prevented from grieving his claim "through no fault of his own," and will deny summary judgment as to this claim.

## IV.

Crawley alleges that DHOs Wolfe and MacVean denied him due process at his disciplinary hearings by refusing to allow him to present evidence in his defense. Having reviewed the record, the court will grant defendants' motion for summary judgment as to Crawley's due process claims against DHO Wolfe but deny the motion as to the due process claims against DHO MacVean.

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). When the punishment does not cause the original sentence to be enhanced, protected interests will generally be limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

While prisoners are afforded rights of due process, they are necessarily balanced with the interests of institutional security. *Wolff v. McDonnell*, 418 U.S. 539 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. To provide constitutionally sufficient procedural due process, a disciplinary proceeding must provide the following: (1) advance written notice of a claimed violation at least 24 hours before any

disciplinary hearing; (2) the ability of the prisoner to call witnesses and present documentary evidence at the disciplinary hearing; (3) a written statement of the evidence relied upon by the factfinder and the reasons for the disciplinary action taken. *See Dilworth v. Adams*, 841 F.3d 246, 253 (4th Cir. 2016) (citing *Wolff*, 418 U.S. at 563−66). To provide constitutionally sufficient substantive due process, a disciplinary offense finding must be "supported by some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).

### Claims #4 and 5 — Due process violations by DHO Wolfe

Claims #4 and 5 concern a disciplinary hearing conducted by DHO Wolfe on Crawley's charge of "lying or giving false information to an employee." (Disciplinary Offense Rep. [ECF No. 1-1 at 15].) On June 2, 2017, Crawley filed an emergency grievance claiming that Officer Crotts had assaulted him on May 3, 2017. After an intel officer reviewed relevant video footage, it was determined that "it [was] clear no assault took place," and the disciplinary charge was consequently filed against Crawley. (*Id.*)

Crawley was notified of the charge on June 6. Crawley did not submit any requests for documentary evidence or witnesses. (Wolfe Aff. ¶ 7 [ECF 74]; Disciplinary Offense Rep. [ECF No. 1-1 at 16].) A disciplinary hearing was held on June 28, 2017. DHO Wolfe attests that Crawley "mentioned that he had an affidavit from another offender but decided that he would not submit it because he did not want the offender to get a charge." (*Id.*) DHO Wolfe attests that the video footage had been reviewed by the reporting officer and that he would not review it. DHO Wolfe found Crawley guilty based on "the evidence and the testimony given by [Crawley]." (Disciplinary Offense Rep. [ECF No. 1-1 at 16].) DHO Wolfe imposed a penalty

of 30 days of cell restriction. After institutional review, a written report, including the basis for

DHO Wolfe's determination, was issued on June 30, 2017.

Crawley alleges that DHO Wolfe "arbitrarily" refused to allow Crawley to submit

declaration statements of witnesses to the alleged May 3 assault and that DHO Wolfe

"demonstrated his prejudice when he refused to accept the plaintiff affidavits of witness . . .

or review the video footage" when Crawley contended that he was being falsely accused in

retaliation.

Because the disciplinary hearing penalty did not cause Crawley's sentence to be

enhanced and he does not demonstrate (or even allege) that his 30 days of cell restriction

imposed atypical and significant hardship on him, the court concludes that his due process

right were not affected. *See Sandin*, 515 U.S. at 484. Moreover, the undisputed evidence shows

that Crawley did not submit any request for documentary evidence or witnesses prior to the

hearing. (Wolfe Aff. ¶ 7.) Operating Procedure 861.1(XII)(B) requires witness and

documentary evidence request forms to be submitted within 48 hours of the charge being

served. (Wolfe Aff., Enclosure A [ECF No. 74 at 18].) If the inmate already has possession of

the documentary evidence, he may submit it at the disciplinary hearing without previously

having submitted a request form and the DHO can rule on the authenticity and relevancy of

the document at the hearing. *See* OP 861.1(XII)(B)(1). DHO Wolfe attests that Crawley

indicated that he had an affidavit from another inmate but that he decided not to submit it

because "he did not want the [other inmate] to get a charge. (Wolfe Aff. ¶ 7.) Still further, to

the extent that DHO Wolfe did not review the relevant video footage, the court notes that the

video had been reviewed by the reporting officer prior to the disciplinary hearing and that the

Warden personally reviewed the video footage when Crawley appealed his disciplinary conviction.[5]

Because no due process right was implicated, the court finds no dispute of material fact and, therefore, concludes that the defendants are entitled to judgment as a matter of law as to these claims.

### Claim #15 — Due process violation by DHO MacVean

Claim #15 concerns a disciplinary hearing conducted by DHO MacVean on Crawley's charge of "conspir[ing] or making plans to commit/possession of unauthorized drugs." (Disciplinary Offense Rep. [ECF No. 1-1 at 28].) On July 21, 2017, an intel officer reviewed Crawley's property and discovered a class workbook in which it was written that Crawley wanted to obtain a cell phone to conduct business without using codes. There were also two pages of handwritten codes for drugs. Crawley was consequently charged with conspiracy or making plans to possess unauthorized drugs.

Crawley was notified of the charge on July 21. There is no dispute that Crawley submitted two requests for documentary evidence: one for the two pages of drug codes, and the other for his workbook. (Requests for Doc. Evid. [ECF No. 1-1 at 31−32].) DHO MacVean denied both of Crawley's requests for documentary evidence.

A disciplinary hearing was held on July 31, 2017. At the hearing, Crawley asked to call Ms. Whitaker as a witness. DHO MacVean noted that Crawley had not submitted any requests for witnesses, but Crawley informed him that he had submitted the witness request form along

---

[5] Prison video surveillance evidence constitutes documentary evidence, *see Lennear v. Wilson*, 937 F.3d 257 (4th Cir. 2019), and there is no dispute that Crawley did not file any request for documentary evidence.

with the requests for documentary evidence. (MacVean Aff. ¶ 7 [ECF No. 72-3 at 3].) Ms. Whitaker was the instructor of the class where the workbook was used. Crawley alleges that his workbook notes were made in response to Ms. Whitaker's instruction that the class imagine a particular situation and that the notes were not based on a real-life situation. Crawley wanted to call Ms. Whitaker as a witness so that she could testify that she instructed the class as he described. (*Id.*) DHO MacVean denied Crawley's witness request and stated that, during *his* time as a counselor, he never asked offenders to put fake information in the workbook. (Mem. [ECF No. 1-1, at 36].) DHO MacVean found Crawley guilty of the offense "[b]ased on [Crawley] writing that he wanted to possess a cell phone and having 2 written pages of drug codes." (Disciplinary Offense Rep. [ECF No. 1-1 at 30].) DHO MacVean imposed a penalty of 30 days of disciplinary segregation and loss of 180 days of good-conduct time. After an institutional review, a written report, including the reason for DHO MacVean's decision, was issued on August 9, 2017.

Because Crawley lost good-conduct time as a result of the disciplinary conviction, his due process rights were implicated. Due process requires, among other things, that the inmate be provided an opportunity to call witnesses and present evidence in his defense, so long as it is "consistent with institutional safety and correctional goals." *Hill*, 472 U.S. at 454 (citing *Wolff*, 418 U.S. at 563−67. Having reviewed the record, the court finds a genuine dispute of material fact as to whether DHO MacVean denied Crawley due process when he refused to allow Crawley to call Ms. Whitaker as a witness. Accordingly, the court will deny the defendants' motion for summary judgment as to this claim.

## V.

For the reasons stated, the court will grant in part and deny in part the defendants' motion for summary judgment.[6] The following claims will remain pending: excessive force and assault claims against Officer Crotts, a retaliation claim against Lt. Colna, and a due process claim against DHO MacVean.

The clerk is directed to send copies of this Memorandum Opinion and Order to the parties.

**ENTERED** this 11th day of August, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[6] Crawley has also filed a motion for summary judgment. (ECF No. 86.) For the same reasons discussed in this opinion, the court will deny Crawley's motion for summary judgment.