IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DAVID CRAWLEY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:19cv00474 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| B. KANODE, *et al.*, ) | By:  Hon. Thomas T. Cullen |
| ) |       United States District Judge |
| Defendants. ) | |

_____

Plaintiff David Crawley, a former Virginia inmate who was housed at River North Correctional Center ("River North"), filed this action under 42 U.S.C. § 1983, alleging 35 enumerated claims of excessive force, retaliation, due process violations, and equal protection violations against 19 defendants at the prison. (*See* ECF No. 1.) On March 30, 2022, the court granted in part and denied in part the motion to dismiss of some of the defendants, leaving 15 claims against 13 defendants pending. (*See* ECF Nos. 63 & 64.) The defendants then filed a motion for summary judgment, arguing that Crawley failed to exhaust administrative remedies as to several of his claims before pursuing them in this action. (*See* ECF No. 95.) On August 11, 2022, the court granted in part and denied in part the defendants' motion for summary judgment, leaving three claims against three defendants pending.[1] (*See* ECF Nos. 94 & 95.) Specifically, an excessive force and assault claim against Officer Crotts, a retaliation claim against Lt. Colna, and a due process claim against Disciplinary Hearing Officer ("DHO") MacVean remain.

---

[1] Crawley also filed a motion for summary judgment (ECF No. 86) which the court denied in the same opinion. (*See* ECF Nos. 94 & 95.)

In denying summary judgment, the court concluded that, although Crawley had not exhausted administrative remedies as to the claims against Officer Crotts and Lt. Colna before pursuing those claims in this action, there was a genuine dispute of material fact as to whether administrative remedies were available to him (ECF No. 94 at 15 & 17); if they were not, then his failure to exhaust would not require dismissal of his claims. The court referred the matter to Magistrate Judge Pamela Meade Sargent, *see* 28 U.S.C. § 636(b)(1)(B), to conduct an evidentiary hearing to determine whether the established grievance procedures were available to Crawley. (ECF No. 97.)

The Magistrate Judge conducted an evidentiary hearing on January 18, 2023. On January 31, 2023, she filed a report and recommendation, finding that River North's established grievance procedure was available to Crawley regarding his claims against Officer Crotts and Lt. Colna, and that he was not prevented from using the procedure by the actions of prison staff. (*See* ECF No. 118 at 18.) Therefore, the Magistrate Judge recommended that the court enter judgment in favor of these defendants based on Crawley's failure to exhaust his available administrative remedies prior to pursuing these claims in this action. (*Id.*)

On March 8 and 14, 2023, Crawley, through counsel, filed timely objections to the report and recommendation. (ECF Nos. 124 & 127). In his objections, Crawley argues that he exhausted available administrative remedies and that the grievance procedure at River North is too confusing and complicated.[2] After reviewing the record, the court will overrule

---

[2] Crawley also argues that that "the 'process' for receiving and processing inmate grievances at River North falls far short of due process." (ECF No. 127 at 14.) But an inmate has no due process right to participate in the state-created grievance process. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *see also*

- 2 -

Crawley's objections, adopt the report and recommendation, and enter judgment in favor of defendants Officer Crotts and Lt. Colna. Accordingly, only Crawley's due process claim against DHO MacVean will remain.

## I.

When a matter is referred to a magistrate judge for a report and recommendation, the parties may "serve and file specific, written objections" to the magistrate judge's proposed findings and recommendations. 28 U.S.C. § 636(b)(1)(C). A district court must review *de novo* any part of a report and recommendation to which a party properly objects. 28 U.S.C. § 636(b)(1)(C); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The district court's reasoning need not be elaborate or lengthy, but it must provide a specific rationale that permits meaningful appellate review. *See, e.g.*, *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009). A party must object "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). The Fourth Circuit explained that:

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

---

*Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) ("*Adams* establishes a clear rule: inmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process, for example.").

*Id.*

*De novo* review is not required "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." *Orpiano*, 687 F.2d at 47. An objection that repeats arguments raised before a magistrate judge is deemed a general objection to the entire report and recommendation, which is the same as a failure to object. *Veney v. Astrue*, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008). A plaintiff who reiterates his previously raised arguments will not be given "the second bite at the apple [ ]he seeks." *Id.*

A district court is also not required to review any issue *de novo* when no party objects. *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983). Rather, a district court reviews for clear error any part of a report and recommendation not properly objected to. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). Clear error means that a court, after "reviewing . . . the entire evidence[,] is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see FTC v. Ross*, 743 F.3d 886, 894 (4th Cir. 2014) (noting a factual finding based on the resolution of conflicting evidence is entitled to deference under the clear error standard).

## II.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions. . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Proper exhaustion demands

compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 91.

The sole exception to the PLRA's exhaustion requirement is found in the text itself: "A prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 578 U.S. 632, 636 (2016). The Supreme Court has provided three scenarios where administrative remedies are considered "unavailable": (1) where the procedure "operates as a simple dead end" because officials are "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the grievance process itself is so incomprehensible that "no ordinary prisoner can discern or navigate it"; and (3) where administrators prevent inmates from availing themselves of remedies by way of "machination, misrepresentation, or intimidation." *Id.* at 643–44.

River North follows the Virginia Department of Corrections' ("VDOC") well-established grievance procedure, which is set out in the VDOC's Operating Procedure ("OP") 866.1. (*See* ECF No. 117-9.) The court previously described the grievance process in detail in its prior opinion (*see* ECF No. 94 at 8–10) and will summarize it here by noting that, to exhaust administrative remedies in a VDOC facility, an inmate must file an informal complaint, a regular grievance that is accepted at intake, and an appeal, in that order. When an inmate files an informal complaint, the grievance department issues a receipt when they receive it. If no response is given to the informal complaint within 15 days, the inmate may proceed to file a regular grievance but must attach the informal complaint receipt to it. A regular grievance must be filed within 30 days of the incident giving rise to the complaint. When an inmate files

- 5 -

a regular grievance, it is either accepted or rejected at intake. If accepted, the grievance department issues a receipt. If rejected, the grievance is returned to the inmate with indication of the reason for the rejection. If there is still time remaining on the 30-day deadline, the inmate may cure the deficiency (if possible) and refile. If the inmate is unsatisfied with an accepted grievance's response or no response is given to the grievance within 30 days, the inmate may proceed to file an appeal. In most cases, this appeal is the final level of review.

The court previously determined that "Crawley did not exhaust administration remedies" as to his excessive force and assault claims against Officer Crotts or his retaliation claim against Lt. Colna. (ECF No. 94 at 15 & 17.) Crawley did not submit any additional records reflecting that a relevant regular grievance was accepted at intake and subsequently appealed. Accordingly, the court again concludes that these claims are unexhausted.

Crawley's objections argue that he proved that he "exhausted all *available* administrative remedies," and that the grievance procedure at River North is "confusing, cumbersome and convoluted" and "full of tripwires and unquestionably designed to frustrate the efforts of hapless *pro se* prisoners." (ECF Nos. 124 at 1, 4–5 (emphasis added).) These are general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's report and recommendation. As such, the court is not required to perform a *de novo* review. Having reviewed the report and recommendation, Crawley's objections, and pertinent portions of the record, the court is satisfied that there is no "clear error" in the report and recommendation. But even if the court were to conduct a *de novo* review, the court still agrees with the Magistrate Judge's report and recommendation.

**A. Excessive force and assault claims against Officer Crotts**

The evidence establishes that Crawley was on grievance restriction at the time of the alleged May 3, 2017 assault.[3] Under the grievance limitation, Crawley could only file one informal complaint and one regular grievance per week; any filings in excess of this limitation would be returned to him. (ECF No. 117-11 at 1; VDOC OP 866.1 at 5 [ECF No. 117-9].) Despite being under the limitation,[4] Crawley alleges that he submitted two informal complaints together on May 8, 2017. River North's records show that only one of the informal complaints was received by their grievance department. In one informal complaint, Crawley requested certain video footage from May 3, 2017.[5] And he alleges that, in the other informal complaint, he complained about the alleged May 3 assault. The informal complaint concerning preservation of the video footage was responded to on May 15, 2017, indicating that the footage had been preserved. Crawley never received a response or receipt or return of the alleged second informal complaint concerning the alleged assault.

---

[3] The defense presented a memorandum showing that Crawley was under a grievance limitation from "February 25, 2017 through May 26, 2017[,] or 90 days." (ECF No. 117-11 at 1.)

[4] The court notes that Crawley was given a warning before the limitation was imposed (*see* ECF No. 117-11 at 2) and was given notice after the limitation was imposed (*see* ECF No. 117-11 at 1). Crawley did not grieve or appeal the imposition of the limitation.

[5] The court notes that Crawley did not reference the alleged assault in this informal complaint. It stated as follows:
> For legal purposes I need the video surveillance recordings from C-Bldg. hallway on 5/3/17 between 8:50 AM and 9:10 AM held as evidence. I'm requesting the recordings from all three cameras so that the entire scene from the area that covers the metal detector to the door is reviewable. This is a formal complaint I'm make [*sic*] in regard to this date and time on that recording.

(ECF No. 117-1.)

Under OP 866.1, any informal complaint or grievance submitted in excess of a grievance limitation is returned to the inmate without a response. (ECF No. 117-9 at 5.) In addition, Institutional Ombudsman Walls testified that if Crawley submitted more than one informal complaint in a week while under the limitation, the grievance department would have stamped the excess submission(s) with the word "Limitation," kept a copy in Crawley's grievance file, and returned the excess informal complaint to Crawley. (Evid. Hr'g Tr. at 57:3−9; 61:24−62:2 [ECF No. 125].) Walls also testified that, while Crawley's grievance file contained an informal complaint dated May 8, 2017, that pertained to the preservation of video footage, it did not contain a copy of an informal complaint related to the alleged assault itself.

After receiving no response, receipt, or return of his alleged informal complaint about the alleged assault, Crawley filed a regular grievance on this issue on May 29, 2017. Crawley did not attach a copy of the informal complaint or a receipt to the grievance and did not address the alleged failure to receive either a receipt for or a copy of the informal complaint. This regular grievance was rejected at intake the following day for failing to attach the informal complaint. Crawley appealed the intake decision to the Regional Ombudsman and attached a letter explaining that he had never received a receipt for or a copy of the informal complaint. The Regional Ombudsman upheld the intake decision on June 5, 2017, and Crawley admitted that he did not file any other administrative remedies forms with regard to the alleged assault.

Although Crawley argues that he "complained more than adequately" about the assault (ECF No. 124 at 5), Walls testified that nothing would have prevented Crawley from filing a timely informal complaint about the alleged assault the week after he filed the informal

complaint about the video footage. Crawley conceded, however, that he did not do this, and he does not claim that he was prevented from doing so.

**B. Retaliation claim against Lt. Colna**

Crawley was not under a grievance limitation at the time he filed informal complaints and regular grievances related to his retaliation claim. On July 18, 2017, Crawley filed an informal complaint stating that Lt. Colna had confiscated his property, including affidavits and legal documents, but had not provided Crawley with a confiscation of property form. (Pl. Ex. 4 [ECF No. 117-4]) Lt. Colna responded on July 21, stating that handwriting samples were required by the investigator due to an incident that Crawley was involved in, that none of the samples were legal in nature, and that a confiscation form was completed at the time and was again attached to that response.

On July 19, 2017, Crawley filed another informal complaint asserting that Lt. Colna had harassed and retaliated against him on July 18 when Lt. Colna accused Crawley of writing two request forms with derogatory language to Counselor Mishoe. (Pl. Ex. 3 [ECF No. 117-3].) In a July 25 response to the informal complaint, an investigator denied that Crawley had been threatened or assaulted.[6]

---

[6] Crawley testified at the evidentiary hearing that he did not receive this informal complaint response until after the 30-day time period for filing a regular grievance about the retaliation had expired. But as the Magistrate Judge noted in her report, the evidence contradicts Crawley's testimony. The evidence shows that Crawley attached a copy of the informal complaint (with the July 25 response on it) to a regular grievance filed at the end of July (the date on the grievance is "7/  /17") and to another regular grievance submitted on August 7, 2017. Thus, at the very least, Crawley had the informal complaint response by no later than July 31, 2017 and he would have still had more than two weeks to timely file a regular grievance related to Lt. Colna's alleged harassment and retaliation.

At the end of July 2017,[7] Crawley filed a regular grievance stating:

> I don't talk to Lt. Colna, Horton, or any other staff outside of asking them what they announce over the intercom or to get me money withdrawal(s) sign[ed] for copies or postage.
> So no way could they have ever heard me make comments that matches statements from some request counselor Mishoe received. Also, no one here is a handwriting analys[t]. Therefore, if they had documents of mine[] beforehand that were similar to the request written to Mishoe, then why did they need my documents.
> So like I said, Lt. Colna picked me out of 250+ offenders in his b[uilding] to harass, but I wrote up his staff and him.

(Def. Ex. 3 [ECF No. 117-12].) As relief, Crawley stated that he wanted to "have the investigator unit, Lt. Colna, and the remainder of this facility administration stop subjecting [him] to continuous retaliation." (*Id.*) The grievance was submitted with the July 19 informal complaint attached to it. The grievance was rejected at intake on August 3 for insufficient information and because the issue raised in this grievance was different from the issue in the informal complaint. The rejection noted that a confiscation-of-property form was not attached and that it also appeared to be untimely as to the confiscation-of-property issue. Crawley did not appeal the intake decision and did not present any evidence that he was prevented from appealing the intake decision. At the time the grievance was rejected at intake on August 3, Crawley still had time to file a regular grievance concerning the alleged retaliation.

On August 7, 2017, Crawley filed a regular grievance complaining of retaliation and harassment by Lt. Colna related to the issue with Counselor Mishoe. (Def. Ex. 4 [ECF No.

---

[7] The grievance does not indicate the specific day in July that it was filed; instead, it is dated "7/ /17." (Def. Ex. 3 [ECF No. 117-12].)

117-13].) But as relief to his grievance, Crawley stated that he wished to "clear [his] name by having a certified official from Richmond who specialize[s] in handwriting analysis compare [his] to the two request[s] sent to Mishoe." (*Id.*) The grievance was rejected at intake as a request for services on August 7, 2017. The intake decision was upheld on appeal on August 9.[8] (ECF No. 72-1 at 49.) At the time the grievance was rejected at intake on August 7 and even when the appeal was concluded on August 10, Crawley still had time to file a regular grievance concerning the alleged retaliation.

On August 7, 2017, Crawley filed yet another regular grievance complaining that Lt. Colna and other officials had "accosted" him and "subjected [him] to strongarmed robbery" of his personal property.[9] (ECF No. 72-1 at 51.) As relief, Crawley asked to have a "felony warrant for robbery taken out on Lt. Colna and to be issued a restraining order indefinite against him." (*Id.*) By no later than August 10, the grievance was rejected at intake because no informal complaint was attached, as an expired filing as to the confiscation-of-property issue, and because no confiscation form was attached. The intake decision was upheld on appeal. At the time the grievance was rejected at intake on August 10, Crawley still had time to file a regular grievance concerning the alleged retaliation.

Although Crawley filed three regular grievances, none were accepted at intake. In the first one, Crawley's allegations did not match the issues raised in the informal complaint he

---

[8] The court notes that evidence of this appeal was not presented in the evidentiary hearing, but it is nevertheless part of the court's record as it was attached to the defendants' previous motion for summary judgment.

[9] This grievance record also was not presented in the evidentiary hearing but became part of the court's record with the defendants' motion for summary judgment.

attached. In the second one, he requested services. And, in the third, he failed to attach an informal complaint. In each instance, Crawley received the intake rejections before his time to file a regular grievance had expired. Crawley does not otherwise assert that he was prevented from filing a timely regular grievance that directly addressed the alleged retaliation and that met the grievance intake requirements.

**C. OP 866.1**

Finally, to the extent that Crawley argues that the grievance procedure at River North is "confusing, cumbersome and convoluted" and "full of tripwires and unquestionably designed to frustrate the efforts of hapless *pro se* prisoners," the court concludes that his arguments are without support and do not establish that administrative remedies were not "available" to him.

River North follows the VDOC's well-established grievance procedure set out in OP 866.1. In the court's experience, numerous inmates have successfully utilized the grievance process, including inmates at River North. Moreover, Walls testified that Crawley uses the grievance system "quite regularly," and Crawley even admitted at the evidentiary hearing that he knew the "grievance system pretty well." (Evid. Hr'g Tr. at 51: 9−12, 40:18-23.) Accordingly, the court cannot conclude that the grievance process itself is so incomprehensible that "no ordinary prisoner can discern or navigate it."

## III.

Having reviewed the report and recommendation, Crawley's objections, and pertinent portions of the record, the court agrees with the Magistrate Judge's report and recommendation. The court concludes that administrative remedies were available to Crawley concerning his excessive force and assault claims against Officer Crotts and his retaliation claim against Lt. Colna, and that Crawley failed to exhaust them before pursuing his claims in this action. Accordingly, the court will overrule Crawley's objections, adopt the report and recommendation, and enter judgment in favor of defendants Officer Crotts and Lt. Colna. Therefore, only Crawley's due process claim against DHO MacVean remains pending.

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 3rd day of April, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE